ELECTRONICALLY FILED
Lonoke County Circuit Court
Deborah Oglesby, Circuit Clerk
2020-Nov-20  10:00:30
43CV-20-752
C23D01 : 17 Pages

IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS

**LACKIE DRUG STORE, INC.,**

    Plaintiff,

v.                                                    Case No. 43CV-20-752

**ARKANSAS CVS PHARMACY, L.L.C.,
CVS HEALTH CORPORATION,
CAREMARK, L.L.C., CAREMARKPCS,
L.L.C., EXPRESS SCRIPTS, ESI MAIL
PROCESSING, INC., ESI MAIL
PHARMACY SERVICE, INC., EXPRESS
SCRIPTS PHARMACY, MEDIMPACT
HEALTHCARE SYSTEMS, INC.,
MEDIMPACT DIRECT, LLC,
OPTUMRX, INC., OPTUMRX
PHARMACY, INC., and
PHARMACEUTICAL CARE
MANAGEMENT ASSOCIATION**

    Defendants.

---

### FIRST AMENDED COMPLAINT

---

COMES NOW Plaintiff Lackie Drug Store, Inc. ("Lackie Drug" or "Plaintiff"), and alleges as follows:

## PARTIES

1.    Lackie Drug Store, Inc. ("Lackie Drug") is an Arkansas citizen with its principal place of business in Lonoke, Arkansas. It owns and operates an independent retail pharmacy in the City of Lonoke.

2.    Arkansas CVS Pharmacy, L.L.C. ("Arkansas CVS Pharmacy") is a citizen of Arkansas. It is an Arkansas limited liability company formed pursuant to Arkansas law. Its registered agent for service of process is CT Corporation System, 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72201. When the phrase "Defendant PBM Affiliate" is used herein, Arkansas CVS Pharmacy is expressly included therein.

3.    CVS Health Corporation ("CVS Health") is a Delaware corporation with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Its registered agent for service of process is the Corporation Trust Company, Corporation Trust Center 1209, Orange St, Wilmington, Delaware 19801. CVS Health is a publicly traded corporation on the New York Stock Exchange. CVS Health owns and operates the retail pharmacy chain known as CVS Pharmacy, a Pharmacy Benefits Manager ("PBM") known as CVS Caremark, and a health insurance provider known as Aetna. When the phrase "Defendant PBM" is used herein, CVS Health Corp. is expressly included therein.

4.    Caremark, L.L.C. is a California limited liability company with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801. Caremark, L.L.C. owns,

controls, and operates one of the largest Pharmacy Benefit Managers ("PBMs") in the world. When the phrase "Defendant PBM" is used herein, Caremark, L.L.C., is expressly included therein.

5. CaremarkPCS, L.L.C. is a Delaware limited liability company with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Its registered agent for service of process is CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, Rhode Island 02914. Together, Caremark, L.L.C. and CaremarkPCS, L.L.C. (collectively referred to as "Caremark") own, control, and operate one of the largest PBMs in the world. When the phrase "Defendant PBM" is used herein, CaremarkPCS, L.L.C., and Caremark are expressly included therein.

6. Express Scripts, Inc. ("Express Scripts") is a Delaware corporation with its principal place of business located at One Express Way, HQ2E04, St. Louis, Missouri 63121. Its registered agent for service of process is CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101. Express Scripts owns and operates one of the largest PBMs in the world. When the phrase "Defendant PBM" is used herein, Express Scripts is expressly included therein.

7. ESI Mail Order Processing, Inc. ("ESI Mail Order Processing") is a Delaware corporation with its principal place of business located at One Express Way, St. Louis, Missouri 63121. Its registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

8. ESI Mail Pharmacy Service, Inc. ("ESI Mail Pharmacy Service") is a Delaware corporation with its principal place of business located at One Express Way, St.

Louis, Missouri 63121. Its registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

9. Express Scripts Pharmacy, Inc. ("Express Scripts Pharmacy") is a Delaware corporation with its principal place of business located at One Express Way, St. Louis, Missouri 63121. Its registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

10. Together, ESI Mail Order Processing, ESI Mail Pharmacy Service, and Express Scripts Pharmacy (collectively referred to as "Express Scripts Mail Order Pharmacy") own and operate pharmacy services in the United States that dispenses prescription medication through the mail to consumers in the State of Arkansas. When the phrase "Defendant PBM affiliate" is used herein, all of these entities comprising Express Scripts Mail Order Pharmacy are expressly included therein.

11. MedImpact Healthcare Systems, Inc. ("MedImpact") is a California corporation with its principal place of business located at 10181 Scripps Gateway Ct, San Diego, California 92131. Its registered agent for service of process is CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California 90017. MedImpact owns and operates one of the largest PBMs in the world. When the phrase "Defendant PBM" is used herein, MedImpact is expressly included therein

12. MedImpact Direct, LLC ("MedImpact Direct") is an Arizona limited liability company with its principal place of business located at 8060 S Kyrene Road, Tempe, Arizona 85284. Its registered agent for service of process is CT Corporation System, 3800 N Central Avenue, Suite 460, Phoenix, Arizona 85012. MedImpact Direct

owns and operates a pharmacy service in the United States that dispenses prescription medication through the mail to consumers in the State of Arkansas. When the phrase "Defendant PBM affiliate" is used herein, MedImpact Direct is expressly included therein.

13. OptumRX, Inc. ("OptumRX") is a California corporation with its principal place of business located at 2300 Main Street, MS CA134-0501, Irvine, California 92614. Its registered agent for service of process is CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California 90017. OptumRX owns and operates one of the largest PBMs in the world. When the phrase "Defendant PBM" is used herein, OptumRX, Inc., is expressly included therein.

14. OptumRX Pharmacy, Inc. ("OptumRX Pharmacy") is a Delaware corporation with its principal place of business located at 2300 Main Street, Irvine, California 92614. Its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801. OptumRX Pharmacy, Inc. owns and operates a pharmacy service in the United States that dispenses prescription medication through the mail to Arkansas consumers. When the phrase "Defendant PBM affiliate" is used herein, OptumRX Pharmacy is expressly included therein.

15. Pharmaceutical Care Management Association ("PCMA") is the national trade association representing Pharmacy Benefit Managers (or "PBMs") with a principal place of business in Washington, D.C. When the phrase "Defendant PBM" is used herein, Caremark, L.L.C., is expressly included therein. The PCMA is operated, in effect, by its

member PBMs and their affiliates to promote their wrongful schemes and conspiracy alleged in this pleading.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over these claims pursuant to Ark. Code Ann. § 16-13-201.

17. This Court has personal jurisdiction over all parties to this action pursuant to Ark. Code Ann. § 16-4-101 as all parties have extensive business operations in the State of Arkansas specifically related to the allegations made the basis of this Complaint.

18. Venue is proper in Lonoke County Circuit Court pursuant to Ark. Code Ann. § 16-60-101(b)(1).

## FACTUAL ALLEGATIONS

19. Many residents of Lonoke County and other citizens throughout the State of Arkansas receive their prescription drug benefits through health plans, including self-funded and insured health benefit plans.

20. These health plans contract with Pharmacy Benefit Managers (or "PBMs"), which administer and manage the health plans' prescription drug benefits, and to make reimbursement payments to pharmacies after filling a prescription for a consumer.

21. Plaintiff fills prescriptions to health plan participants by using drugs purchased from wholesalers or manufacturers, and is independently owned; meaning, it is not publicly traded or owned by a big brand national pharmacy chain.

22. When the consumer patient visits Lackie Drug, the pharmacist runs the consumer's health plan identification numbers in a computer system that informs the

pharmacist what the copayment the consumer owes and how much the pharmacy will obtain by reimbursement from the consumer's health plan's PBM.

23. PBMs utilize Maximum Allowable Cost ("MAC") methodologies in order to determine what amounts they will reimburse pharmacies for prescription drugs. MACs specify an allowable reimbursement by a PBM to a pharmacist or pharmacy based upon the availability of a drug from multiple manufacturers but sold at different prices. MAC methodology is a common reimbursement metric for PBMs.

24. PBMs determine reimbursement rates for drugs from Average Wholesale Prices ("AWP"), Maximum Allowable Costs ("MAC") lists made available by state Medicaid systems, PBMs' negotiation of in-house mail-order pharmacy rates (i.e., the amount that Defendant PBMs can negotiate as a self-interested pharmacist), and other variables chosen by the PBMs.

25. Historically, the MAC methodology was/is unavailable for review to anyone except for the PBM.

26. Arkansas, however, statutorily requires PBMs to allow pharmacists and pharmacies access to the PBMs' Maximum Allowable Cost ("MAC") Lists. These statutorily mandated lists include generally a listing of drugs or other methodology used by a PBM, directly or indirectly, to set the maximum allowable payment to a pharmacy or pharmacist for a generic drug, brand-name drug, biologic product, or other prescription drug. Access to the PBM's Maximum Allowable Cost List allows the pharmacist or pharmacy to know the reimbursement rate of the drug *prior* to filling the prescription for the consumer. Further, Arkansas law mandates all PBMs to update their

MAC Lists in a timely manner so each Arkansas pharmacist and pharmacy has current information as to pricing.

27. The Defendant PBMs administer or manage pharmacy benefit plans or programs for Arkansas consumers of prescription drugs.

28. The market reality exists that Lackie Drug is forced to engage with the Defendant PBMs to fill drug prescriptions for patients, and then are further dependent on the Defendant PBMs to pay them insurance reimbursements for their filled prescriptions based upon the Defendant PBMs' MACs.

29. However, contrary to Arkansas law and to further their conspiracy of anticompetitive and unconscionable business practices, the Defendant PBMs do not allow Lackie Drug access to their MAC Lists or pricing methodologies.

30. Instead, the reimbursement system controlled by the Defendant PBMs forces Lackie Drug to fill prescriptions without the benefit of the current MAC and often times upon outdated information with full knowledge and with the purpose of causing Lackie Drug to lose money in the transaction because its cost for the particular drug is higher than what they PBM will provide them as an insurance reimbursement.

31. Further, Defendant PBMs know that due to the reimbursement process, once the back-end price is set for the reimbursement, Lackie Drug is stuck just taking that lower amount in order to get some reimbursement. But again, and indeed by design, the Defendant PBMs and their Defendant PBM Affiliates purposely cause Lackie Drug to lose money.

32. The Defendant PBMs and the Defendant PBM Affiliates are knowledgeable and, in fact, intend for Lackie Drug to lose substantial sums of money in this blind reimbursement process in order to remove Lackie Drug, and other Arkansas' independent pharmacies like it and that compete against Arkansas CVS Pharmacy and other PBM Affiliates, from the marketplace or force them to sell their business to a big brand PBM Affiliate's pharmacy controlled, operated, and preferred by a PBM.

33. In fact, in recent State audits, it is clear that the Defendant PBM lessen their profit spreads with Arkansas CVS Pharmacy and the other Defendant PBM Affiliates, but have lower insurance reimbursements for Lackie Drug and independent pharmacies.

34. As such, the beneficiaries under the Defendant PBMs' and Defendant PBM Affiliate's unlawful scheme to eliminate Lackie Drug and possibly other Arkansas' independent pharmacies are Arkansas CVS Pharmacy and other PBM affiliates competing for pharmaceutical business in Arkansas.

35. In fact, Arkansas CVS Pharmacy, through its multiple stores throughout the State of Arkansas, participates as an active co-conspirator in the anticompetitive, deceptive, unconscionable, and unfair practices alleged in this complaint. Arkansas CVS Pharmacy also directly benefits from its participation in the unlawful scheme by purchasing the financially suffering business's pharmaceutical accounts and setting up another one of its big brand CVS or Target pharmacy stores in Arkansas.

36. Arkansas CVS Pharmacy, the Defendant PBMs and their respective Defendant PBM affiliates conspire to:

   a. Deny Lackie Drug access to the Defendant PBMs' MAC Lists;

    b.  Deny Lackie Drug timely and updated information about PBMs' MAC;

    c.  Provide Defendant PBM affiliates with access to Defendant PBMs' MAC Lists to Lackie Drug's competitive detriment;

    d.  Provide Defendant PBM affiliates with timely and updated information about Defendant PBMs' MAC, and not do so with respect to Lackie Drug; and

    e.  Reimburse Lackie Drug less money for its prescription fills than what Arkansas CVS Pharmacy and other Defendant PBM affiliates are provided for the same prescription drugs.

37.    Through this conspiracy, Arkansas CVS Pharmacy, the Defendant PBMs and their respective Defendant PBM affiliates desire is to force independent pharmacies like Lackie Drug to suffer severe financial stress and go broke, or to sell their business or accounts at depressed market prices to Arkansas CVS Pharmacy or another Defendant PBM Affiliate.

## COUNT I

## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

## PURSUANT TO VIOLATIONS OF A.C.A. § 17-92-507

38.    Plaintiff incorporates all allegations asserted above.

39.    Plaintiff is a pharmacy as defined by A.C.A. § 17-92-507(a)(5).

40.    Pursuant to A.C.A. § 17-92-507(c)(1), Defendant PMBs are required to provide access to their Maximum Allowable Costs List to Plaintiff.

41. Pursuant to A.C.A. § 17-92-507(a)(1)(A) & (b) and (c)(1), the MAC information required to be provided includes the listing of drugs or other methodology setting maximum allowable payment and further without limitation:

> (i) Average acquisition cost, including national average drug acquisition cost;
>
> (ii) Average manufacturer price;
>
> (iii) Average wholesale price;
>
> (iv) Brand effective rate or generic effective rate;
>
> (v) Discount indexing;
>
> (vi) Federal upper limits;
>
> (vii) Wholesale acquisition cost; and
>
> (viii) Any other term that a pharmacy benefit manager or a healthcare insurer may use to establish reimbursement rates to a pharmacist or pharmacy for pharmacist services.

42. Defendant PBMs have failed to and continue to fail to provide the statutorily mandated information for their MAC's as defined by A.C.A. § 17-92-507(a)(1), to include their failure to provide Plaintiff the "methodology used by pharmacy benefits manager, directly or indirectly, setting the maximum payment" and "Any other term that a pharmacy benefit manager or a healthcare insurer may use to establish reimbursement rates to a pharmacist or pharmacy for pharmacist services."

43. Pursuant to A.C.A. § 17-92-507(c)(2), Defendant PBMs are required to timely update the MAC Lists, which in turn provides timely reimbursement information

to Plaintiff. Defendant PBMs failed to and continue to fail to provide the statutorily mandated timely information to Plaintiff.

44. Pursuant to A.C.A. § 17-92-507(d)(1), Defendant PBMs are prohibited from reimbursing Plaintiff an amount less than the amount that the Defendant PBMs reimburses a PBM affiliate for providing the same pharmacist services. However, Defendant PBMs reimburse Plaintiff an amount less than the amount that the Defendant PBMs reimburse a PBM affiliate for providing the same pharmacist services.

45. Defendants' actions violate A.C.A. § 17-92-507, thereby making Defendants' actions a deceptive and unconscionable trade practice pursuant to the Arkansas Deceptive Trade Practices Act, § 4-88-101, *et seq*.

46. The activities at issue are consumer-oriented practices because of the negative impact they have on patient consumers trying to obtain their prescription drugs at a fair price.

47. Defendants' actions alleged above constitute a violation of the of the Arkansas Deceptive Trade Practices Act ("ADTPA") pursuant to A.C.A. §17-92-507(g)(1).

48. Defendants' ADTPA violations have proximately caused actual financial losses to Plaintiff. In fact, through Defendants' forced sale of prescription drugs to consumers without fair and proper, but instead anticompetitive insurance reimbursements, Plaintiff has been and continues to be compelled to habitually and routinely sell prescriptions to a consumer at an actual financial loss. Indeed, Plaintiff's actual financial losses are calculable from its records demonstrating its costs for the

pharmaceuticals purchased and the actual reimbursements received from the Defendant PBMs.

49. Plaintiff relied upon Defendants' to follow Arkansas law, not engage in anticompetitive and deceptive practices, and further, to not violate A.C.A. §17-92-507(g)(1), and has suffered actual financial losses due to Defendants' legal transgressions.

50. Pursuant to A.C.A. § 4-88-113(f)(1)(A), Plaintiff is entitled to recovery of its actual financial losses.

51. Pursuant to Arkansas Code Annotated § 4-88-113(f)(3), Plaintiff is also entitled to an award of its reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE TRADE PRACTICES ACT

## PURSUANT TO VIOLATIONS OF A.C.A. § 17-92-507

52. Plaintiff incorporates all allegations asserted above.

53. Defendants' actions alleged above constitute a violation of the Trade Practices Act ("TPA"), A.C.A. § 23-66-201, *et seq.*, pursuant to A.C.A. §17-92-507(g)(1).

54. Defendants' are liable to Plaintiff for civil penalties for each transaction involving the Plaintiff where Defendants forced Plaintiff to fill a prescription at a financial loss as detailed herein, and in an amount of $10,000.00 per violation.

## COUNT III

## VIOLATION OF THE UNFAIR PRACTICES ACT

55. Plaintiff incorporates all allegations asserted above.

56. Defendants' wrongdoing as described above are anticompetitive practices in violation of the Unfair Practices Act of A.C.A. §4-75-201 et seq.

57. The legislative purpose of the Unfair Practices act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented. A.C.A. §4-75-202.

58. Defendants' wrongdoing alleged here frustrates, and in fact is intentionally designed to prevent honest competition and perpetuate monopolies by the owners of big brand stores, which control the PBMs and are treated much more favorably by the PBMs, and thus, their actions are in violation of the Unfair Practices Act.

59. Defendants' wrongdoing has proximately caused Plaintiff to suffer actual financial losses and damages, to which Defendants are liable to the Plaintiff.

60. Plaintiff is also entitled to a temporary, preliminary and a permanent injunction that ends the wrongful practices alleged herein and that are in violation of the Unfair Practices Act.

## COUNT III

## CONSPIRACY

61. Plaintiff incorporates all allegations asserted above.

62. Defendants purposely and knowingly entered into a conspiracy to violate Arkansas law, and specifically, the provisions of the MAC reimbursement statute (A.C.A. 17-92-507) the ADTPA, the Trade Practices Act, and the Unfair Practices Act, and to cause actual financial losses and further anticompetitive harms to Plaintiff.

63. Defendants' violations of Arkansas law were overt acts in furtherance of their conspiracy and performed with the specific intent to cause Plaintiff to suffer harm as alleged herein.

64. Defendants' conspiracy and intentional actions proximately caused Plaintiff to suffer damages, for which Defendants are liable.

## COUNT IV

## DECLARATORY RELIEF

65. Plaintiff incorporates all allegations asserted above.

66. Pursuant to Ark. Code Ann. § 16-111-102, Plaintiff seeks a declaration that Defendants' actions violate A.C.A. §17-92-507.

67. Pursuant to Ark. Code Ann. § 16-111-108, upon a determination Defendants' actions violate Arkansas law, Plaintiff seek supplemental relief in the form

of an injunction requiring Defendants to comply with A.C.A. §17-92-507, and for all other injunctive relief to which they may prove themselves entitled.

68. Pursuant to Ark. Code Ann. § 16-111-108, upon a determination Defendants' actions violate Arkansas law, Plaintiff seek supplemental relief in the form of disgorgement of all monies received by Defendant PBM affiliates at higher reimbursement rates than received by the Plaintiff for the same pharmacists services.

69. Pursuant to Ark. Code Ann. § 16-111-110, upon a determination Defendants' actions violate Arkansas law, Plaintiff seeks its costs.

## JURY TRIAL DEMANDED

70. Plaintiff demands a jury of twelve on all issues so triable.

[This space intentionally left blank.]

## PRAYER FOR RELIEF

---

WHEREFORE, Plaintiff prays that the Court enters judgment in his favor on all of the claims asserted herein, to Order all of the requested relief pled above, and to provide Plaintiff all other just and appropriate relief.

DATED:   November 20, 2020          Respectfully submitted,

POYNTER TUCKER
**An Association of Law Firms**

Scott Poynter, AR Bar. 09077
scott@poynterlawgroup.com
Daniel Holland, AR Bar. 2019237
daniel@poynterlawgroup.com
POYNTER LAW GROUP, PLLC
Everett Clarke Tucker, AR Bar 2006307
clarke@clarketucker.com
CLARKE TUCKER LAW, PLLC
407 President Clinton Ave., Suite 201
Little Rock, AR 72201
Ph. (501) 812-3943


James C. Wyly, AR Bar No. 90158
jwyly@wylyrommel.com
Sean F. Rommel, AR Bar No. 94158
srommel@wylyrommel.com
**WYLY-ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, TX 75503
(903) 334-8646