IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LACKIE DRUG STORE, INC.**                                                        **PLAINTIFF**

V.                                          4:20CV01515 JM

**ARKANSAS CVS PHARMACY, LLC, ET AL,**                              **DEFENDANTS**

**ORDER**

Pending before the Court are four motions: Motion to Dismiss filed by Pharmaceutical Care Management Association, Motion to Dismiss or in the Alternative to Sever filed by the ESI Defendants,[1] Motion to Dismiss filed by the Optum Defendants,[2] and Motion to Compel Arbitration and Dismiss filed by the Caremark Defendants.[3] The parties have fully briefed the issues and the Court held an in-person hearing on September 15, 2021.

I.      Background

Lackie Drug Store Inc. ("Lackie Drug") is an independently owned pharmacy in Lonoke, Arkansas. The majority of Lackie Drug's business comes from providing prescription medication to local customers who are participants in healthcare insurance plans. In order to provide the medications, Lackie Drug purchases them from wholesalers or manufacturers directly. When a customer visits Lackie's store, a store employee enters the customer's health plan ID number into a computer. The computer displays what copay the customer owes and how much Lackie

---

[1] The ESI Defendants include ESI Mail Pharmacy Service Inc., ESI Mail Processing Inc., Express Scripts Pharmacy, and Express Scripts.
[2] The Optum Defendants include OptumRx Inc. and OptumRx Pharmacy Inc.
[3] The Caremark Defendants include Arkansas CVS Pharmacy LLC, CVS Health Corporation, Caremark LLC, and CaremarkPCS LLC.

Drug will obtain in reimbursement from the healthcare plan's Pharmacy Benefit Manager ("PBM").

PBMs act as intermediaries between healthcare plans and pharmacies dispensing pharmaceutical drugs to plan beneficiaries. In that role, they reimburse pharmacies for the cost of drugs covered by prescription-drug plans. To determine the reimbursement rate for each drug, PBMs develop and administer a Maximum Allowable Cost ("MAC") lists. In 2015, Arkansas passed Act 900, which effectively requires PBMs to reimburse Arkansas pharmacies at a price equal to or higher than the pharmacy's wholesale cost. To accomplish this result, Act 900 requires PBMs to provide pharmacies with their MAC lists, Ark. Code Ann. § 17–92–507(c)(3), timely update their MAC lists when drug wholesale prices increase, Ark. Code Ann. § 17–92–507(c)(2), and to provide pharmacies an administrative appeal procedure to challenge MAC reimbursement rates, § 17–92–507(c)(4)(A)(i)(b). Act 900 also permits Arkansas pharmacies to refuse to sell a drug if the reimbursement rate is lower than its acquisition cost. § 17–92–507(e). Plaintiff has named five (5) PBMs as defendants in this case.[4]

Lackie Drug alleges that the PBM Defendants do not allow Lackie Drug access to their MAC pricing list or pricing methods. According to Lackie Drug, the reimbursement system controlled by the PBM Defendants often causes Lackie Drug to lose money in the sales transaction because Lackie Drug's cost for the medication is higher than the PBMs final reimbursement. Further, Lackie Drug alleges that PBM Defendants use lower reimbursement rates for Lackie Drug than for their affiliates. Lackie Drug alleges that the PBM Defendants are conspiring with their affiliates to put Lackie Drug and other independently owned drug stores in Arkansas out of business by using anticompetitive and unconscionable practices.

---

[4] Express Scripts, OptumRx Inc., CVS Health Corp., Caremark LLC, and Caremark PCS LLC (the "PBM Defendants")

Lackie Drug filed suit against the Defendants for violating the Arkansas Deceptive Trade Secrets Act ("ADTPA"), the Trade Practices Act (the "TPA"), the Unfair Trade Practices Act ("UPA"), and for common law conspiracy. Plaintiff seeks a declaration by the Court that Defendants have violated Ark. Code Ann. § 17-92-507. All Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. If the Court finds that dismissal is not proper, the ESI Defendants ask the Court to sever the claims against them, to strike the class allegations and to transfer the claims against them to a different district court. The Caremark Defendants ask the Court to compel arbitration

II.   Discussion

A. Caremark Motion to Compel Arbitration

The Caremark Defendants contend they have a binding agreement to arbitrate with Lackie Drug based on a provision in the PCS Health Systems Inc. Provider Agreement and in the PCS Health Systems Inc. Provider Manual. In 1995, Ray Lackie, former sole proprietor of Lackie Drug, signed the PCS Health Systems Provider Agreement. The Provider Agreement incorporates the Provider Manual. Caremark contends that the arbitration provisions found in the Provider Agreement and the Provider Manual unambiguously express the parties' agreement to resolve disputes in arbitration not in court.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). "Nevertheless, 'arbitration is a matter of

3

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582, (1960)). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co*., 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Although the Provider Agreement states Arizona law will govern, the Court will apply Arkansas law to the question of whether a contract exists. Regardless, the parties agree that there is no conflict between Arizona and Arkansas contract law.

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Id.* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc*., 60 S.W.3d 428 (Ark. 2001).

In *Sumner*, the Arkansas Supreme Court found that the plaintiffs had not agreed to arbitrate claims with Alltel where there was no signed agreement and no indication that the plaintiffs had received a copy of the arbitration agreement before they continued to use Alltel's services, as Alltel argued. The corporate representative's affidavit stating that it was Alltel's

4

"practice and procedure" to give customers a copy of the terms and conditions containing the arbitration provision prior to initiating their services was insufficient. In this case, Caremark has presented the Provider Agreement signed by Mr. Lackie which contains the arbitration provision. (ECF No. 43-2). Caremark has also provided a record of the shipping vendor's delivery and Lackie Drug's acceptance of the 2016 through 2020 Provider Manuals which contain the arbitration provision. (ECF No. 43-5). It is undisputed that Lackie Drug submitted claims to and received reimbursements after receiving the 2020 Provider Manual.

Lackie Drug argues that Caremark's corporate representative, Steven D. McCall, Vice President of Network Solutions for Caremark, is not competent to testify that these documents were prepared and kept in the ordinary course of Caremark's regularly business. Lackie Drug makes this argument based upon the fact that McCall did not work for Caremark in 1995 when the Provider Agreement was executed and he was not present when Mr. Lackie signed the document. The Court finds this argument to be without merit. A "custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) (quoting *Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994).

Lackie Drug argues that Provider Agreement is not enforceable by the Caremark Defendants because Caremark is not a signatory on the contract. The Court disagrees. PCS Health Systems, Inc. sold and became AdvancePCS on October 1, 2000. (ECF No. 43-3.) On March 24, 2004, AdvancePCS sold to Caremark Rx. (ECF No. 43-4). Caremark Rx became CaremarkPCS LLC at the same time. (ECF No. 43-4). CaremarkPCS is, through these transactions, PCS Health's successor-in-interest. CaremarkPCS is entitled to enforce the Provider

5

Agreement as PCS Health's successor-in-interest. *See Koch v. Compucredit Corp.*, 543 F.3d 460, 465-66 (8th Cir. 2008).

Lackie Drug also argues that, even if the 1995 Provider Agreement is valid, it is irrelevant because Caremark Rx, the predecessor of Caremark, notified its providers that a "new agreement" was effective on August 1, 2004. The Important Notice to Pharmacy Providers states:

> Effective March 24, 2004, the planned acquisition of AdvancePCS by Caremark Rx was completed. Accordingly, AdvancePCS (now CaremarkPCS) and Caremark Inc., are both wholly owned subsidiaries.
>
> Prior to this acquisition, your pharmacy may have had a contract with AdvancePCS and/or Caremark Inc. To facilitate the integration process, both companies will be using the same base pharmacy provider agreement effective August 1, 2004. The new agreement will consist of the AdvancePCS Provider Agreement, along with Exhibit B to the Caremark Participating Pharmacy Agreement, all Attachments to this Exhibit B, and any fee schedules which you have previously entered into with Caremark Inc. This new agreement will apply to all of your CaremarkPCS and Caremark Inc. business beginning August 1, 2004 and will be called the "Caremark Provider Agreement. . . ."

(Exh. A-3 at ECF No. 43-4). The language in the Notice does not nullify the terms of the AdvancePCS Provider Agreement, it merely renames it and adds an exhibit and fee schedules.

The Court finds that there is sufficient evidence that Lackie Drug and Caremark entered into an agreement to arbitrate. Moreover, the United States Supreme Court in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) held that, "under the FAA, traditional principles of state law may allow an arbitration contract to be enforced by or against nonparties to the contract through a number of state-contract-law theories, including equitable estoppel." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014) (finding that Arizona contract laws allows equitable estoppel). Caremark argues that Lackie Drug is estopped from claiming the Provider Agreement is invalid because Lackie Drug's entire case against it is premised on the Provider Agreement and the Provider Manual. Not only

6

has Lackie Drug based its lawsuit on the fact that it has a contractual agreement with Caremark, but Lackie Drug has submitted claims to and accepted reimbursements from Caremark for many years.

For these reasons, the Court finds that Caremark's motion to compel arbitration of Lackie Drug's claims against the Caremark Defendants must be granted. The claims against the Caremark Defendants, Arkansas CVS Pharmacy LLC, CVS Health Corporation, Caremark LLC, and CaremarkPCS LLC, are dismissed.

B. Legal Standard for Motions to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")).  Although "[g]reat precision is not required of the pleadings," the complaint should state how, when, and where the cause of action occurred. *Gregory v. Dillard's Inc.,* 494 F.3d 694, 710 (8th Cir. 2007). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 127 S.Ct. at 1966 (internal citations omitted).

7

It is also true that "a plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotations and citations omitted)).

1. Pharmaceutical Care Management Association

The Court finds that Lackie Drug has not stated sufficient facts about Defendant Pharmaceutical Care Management Association's involvement in the case to create a "claim of entitlement to relief against it." *Twombly*, 127 S.Ct. at 1966. The Pharmaceutical Care Management Association's motion to dismiss is granted.

2. Optum Defendants

In their pleadings, the Optum Defendants and Lackie Drug agree to attend good faith settlement negotiations. Although the Optum Defendants seek settlement negotiations before a mediator, the Court finds that negotiations before the United States Magistrate Judge assigned to the case is the most efficient option. Therefore, Lackie Drug's claims against the Optum Defendants are referred to United States Magistrate Judge Patricia S. Harris. The motion to dismiss is held in abeyance pending the outcome of a settlement conference.

    3. <u>ESI Defendants</u>

Because the ESI Pharmacy Provider Agreement also contains a pre-litigation dispute-resolution provision, the Court refers Lackie Drug's claims against the ESI Defendants to Judge Harris. The ESI motion to dismiss is held in abeyance pending the outcome of a settlement conference.

    III.    <u>Conclusion</u>

For the reasons set forth above, the Motion to Dismiss filed by Pharmaceutical Care Management Association (ECF No. 33) is GRANTED. The Motion to Compel Arbitration and Dismiss filed by the Caremark Defendants (ECF No. 42) is GRANTED. The Motions to Dismiss filed by the Optum Defendants (ECF No. 39) and the ESI Defendants (ECF No. 35) are held in abeyance pending settlement conferences by United States Magistrate Judge Patricia S. Harris.

IT IS SO ORDERED this 29th day of November, 2021.

                                                                                        James M. Moody Jr.
                                                                                        United States District Judge